

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer Garrison, Jr., Director
Texas Department of Public Safety
Camp Mabry
Austin, Texas

Attention: Fred Hickman, Assistant Director

Dear Sir:

Opinion No. O-5007
Re: Is a Texas Ranger author-
ized to execute a warrant
or process issued by a City,
County or State Health Of-
ficer as provided in Arti-
cle 4445, Revised Civil
Statutes of Texas?

This is to acknowledge your opinion request sub-
mitting the above stated question.

Article 4445, Revised Civil Statutes of Texas,
1925, reads as follows:

"Syphilis, gonorrhea and chancroid, herein-
after designated venereal diseases, are hereby
declared to be contagious, infectious, communic-
able and dangerous to the public health:

"Sec. 1. Any physician or other person who
makes a diagnosis in, or treats, a case of
syphilis, gonorrhea or chancroid, and every super-
intendent or manager of a hospital, dispensary, or
charitable or penal institution, in which there is
a case of venereal disease, shall report such case
immediately, in writing, to the local health of-
ficer, stating the name and address or the office
number, age, sex, color, and occupation of the
diseased person, and the date of the onset of the
disease, and the probable source of infection,
provided that the name and address of the diseased
person need not be stated, except as hereinafter

specifically required in Section 5, and provided, further, that all information and reports concerning persons having venereal disease shall be held secret in accordance with provisions in Section 8. The report shall be enclosed in a sealed envelope and sent to the local health officer who shall report weekly on the prescribed form to the State Board of Health, all cases reported to him. The physicians and others residing in cities having no city health officer, shall make reports required in this section direct to the county health officer, where there is a county health officer in the county in which they reside, and where there is no county health officer, all such reports shall be made direct to the State Board of Health.

"Sec. 2. It shall be the duty of every physician and of every other person who examines or treats a person having syphilis, gonorrhea or chancroid, to instruct him in measures for preventing the spread of such disease, and of the necessity for treatment until cured, and to hand him a copy of the circular of information obtainable for this purpose from the State Board of Health.

"Sec. 3. All city, county, or other health officers shall use every available means to ascertain the existence of, and to investigate all cases of syphilis, gonorrhea, and chancroid within their several territorial jurisdictions, and to ascertain the sources of such infections. Local health officers are hereby empowered and directed to make such examinations of persons reasonably suspected of having syphilis, gonorrhea or chancroid as may be necessary for carrying out the provisions of this law. Owing to the prevalence of such diseases among prostitutes and persons associated with them, all such persons are to be considered within the above class.

"Sec. 4. Upon receipt of a report of a case of venereal disease, the local health officer shall institute measures for protection of other persons from infection by such venereally diseased person:

"1. Local health officers are authorized and directed to quarantine persons who have, or are reasonably suspected of having syphilis, gonorrhea, or chancroid, whenever, in the opinion of said local officer, or the State Board of Health, or its executive officer, quarantine is necessary for the protection of the public health. In establishing quarantine the local health officer shall designate and define the limits of the area in which the person known to have, or reasonably suspected of having syphilis, gonorrhea, or chancroid, and his immediate attendant, are to be quarantined, and no person other than the attending physician, shall enter or leave the area of quarantine without the permission of the local health officer.

"No one but the local health officer shall terminate said quarantine, and this shall not be done until the quarantined person has become non-infectious, as determined by the local health' officer or his authorized deputy through clinical examination and all necessary laboratory tests, or until permission has been given him to do so by the State Board of Health or its executive officer.

"2. The local health officer shall inform all persons who are about to be released from quarantine for venereal disease, in case they are not cured, what further treatment should be taken to complete their cure. Any person not cured, before released from quarantine, shall be required to sign the following statement after the blank spaces have been filled to the satisfaction of the health officer:

"I _____ residing at _____ hereby acknowledge the fact that I am at this time infected with _____; and agree to place myself under the medical care of _____, (name of physician or clinic) _____ (address) within ___ hours, and that I will remain under the treatment of said physician or clinic until released by the health officer of _____ or until my case is transferred, with the approval of said health officer, to another regular licensed physician or an approved clinic.

"'I hereby agree to report to the health officer within four days after beginning treatment as above agreed, and will bring with me a statement from the above physician or clinic of the medical treatment applied in my case, and thereafter will report as often as may be demanded of me by the health officer.

"'I agree further, that I will take all precautions recommended by the health officer to prevent the spread of the above disease to other persons and that I will not perform any act which will expose other persons to the above disease.

"'I agree, until finally released by the health officer, to notify him of any change of address and to obtain his consent before moving my abode outside of his jurisdiction.

_____
Signature

_____
Date

"All such agreements shall be filed with the health officer and kept inaccessible to the public.

"The commissioners courts of the various counties and the governing body of all incorporated towns and cities are hereby empowered and directed to provide suitable places for the detention of persons who may be subject to quarantine and who should be segregated for the execution of the provisions of this law; and such commissioners courts and governing bodies of incorporated cities and towns are hereby authorized to incur, on behalf of their said counties, cities or towns, the expenses necessary to the enforcement of this law.

"Sec. 5. 1. When a person applies to a physician or other person for the diagnosis or treatment of syphilis, gonorrhea or chancroid, it shall be the duty of the physician or person so

consulted to inquire of, and ascertain from the
person seeking such diagnosis or treatment, wheth-
er such person has heretofore consulted with, or
has been treated by, any other physician or per-
son, and if so, to ascertain the name and address
of the physician or person last consulted. It shall
be the duty of the physician or other person whom
the applicant consults to notify the physician or
other person last consulted of the change of ad-
visers. Should the physician or person previously
consulted fail to receive such notice within ten
days after the last date upon which the patient
was instructed by him to appear, it shall be the
duty of such physician or person to report to the
local health officer the name and address of such
venereally diseased person.

"2. If an attending physician or other per-
son knows or has good reasons to suspect that a
person having syphilis, gonorrhea, or chancroid
is so conducting himself or herself as to expose
other persons to infection, or is about so to
conduct himself or herself, he shall notify the
local health officer of the name and address of
the diseased person and the essential facts in
the case.

"Sec. 6. All local and state health offi-
cers are directed to co-operate with proper of-
ficials whose duty it is to enforce laws directed
against prostitution, and otherwise to use every
proper means for the repression of prostitution.

"Sec. 7. Physicians, health officers, and
all other persons are prohibited from issuing certi-
ficates of freedom from venereal disease, provid-
ed this section shall not prevent the issuance
of statements of freedom from infectious diseases
written in such form, or given under such safe-
guards, that their use for solicitation for sexual
intercourse would be impossible.

"Sec. 8. All information and reports concern-
ing persons infected with venereal diseases shall

be inaccessible to the public except in so far as publicity may attend the performance of the duties imposed by the laws of the State.

"Sec. 9. Any health officer or other physician who shall wilfully fail to perform the duties required of him in this article shall, in addition to the fines imposed by law, forfeit his right and license to practice medicine within this State; and the district courts of the State shall have jurisdiction of suits for the forfeitures of such license in such cases, and the suit may be filed by any citizen of the State in a court having jurisdiction, under the ordinary rules of venue, and it shall be the duty of the county and district attorneys to represent the petitioners in such suit."

Two Texas cases have arisen wherein construction of the above statute has been considered by the Court of Criminal Appeals. In the first, Ex parte Hardcastle, 84 Tex. Cr. R. 463, 208 S. W. 531, 2 A. L. R. 1539, it is said:

"This is a habeas corpus proceeding in which the relator is held under an order of the city health officer of San Antonio, by virtue of quarantine regulations established in accord with chapter 85 of the Acts of the Fourth Called Session of the Thirty-fifth Legislature under a statement of the order of arrest that, according to the information of the health officer, relator is affected with gonorrhea.

"    . . . .

"The Legislature, under the police power, has authority to authorize the establishment of quarantine regulations for the protection of the public against contagion from those persons whose condition is such as to spread disease, and, incident thereto, to authorize the arrest and detention of such persons; and such, we understand, is the purpose of the statute in question. Under its terms, the proper health officer may issue a warrant by virtue of which a lawful arrest may be

made without preliminary thereto affording the
person affected a hearing; but if, after arrest,
such person challenges the right of the author-
ities to continue the detention, the fundamental
law accords him the right to have the legality of
his detention inquired into by a proper court in
a habeas corpus proceeding. The law denies to no
one restrained of his liberty without a hearing
the right to prove in some tribunal that the facts
justifying his restraint do not exist. Ruling
Case Law, Vol. 6, p. 435, § 449. The health au-
thorities causing the arrest of relator derive
their power to do so from the alleged existence
of the fact that the relator is affected with
the disease mentioned, and that her detention
is required in the public interest to prevent
contagion. If those facts do not exist, the of-
ficer has no jurisdiction to continue the res-
traint and the court in the habeas corpus proceed-
ing has authority to inquire whether the facts es-
sential to jurisdiction exist. Ex parte Degener,
30 Tex. App. 566, 17 S. W. 1111.

" . . . .

" . . . but the power to establish quarantine
as existent under our Constitution, is an incident
of the police power vested in the Legislature un-
der the general power to pass laws. Our statute
does not declare that the initial order of arrest
shall be conclusive; nor does it designate any
tribunal to whom one detained under an order of
arrest issued by the health officer may appeal
for a hearing. The fair and reasonable inter-
pretation of the statute under which relator is
held, we think, is that which accords the health
officer the power to order the arrest and deten-
tion, leaving to the person detained the right to
invoke the decision of the established judicial
tribunals of the state on question raised, either
of fact or law, involving the validity of the de-
tention.

"We conclude that under the act of the Legis-
lature in question the relator had the right to a

hearing on writ of habeas corpus, and therein to
prove the nonexistence of the facts necessary to
authorize her continued detention and thereby ob-
tain release. Facts essential to determine wheth-
er she should or should not be held not being
available in this court, it is ordered that the
writ of habeas corpus prayed for be granted, and
that it be referred for hearing to Hon. R. B. Minor,
Judge of the Fifty-seventh judicial district of
Texas."

And in Ex parte Brooks, 85 Tex. Cr. R. 397, 212 S. W.
956, the court said:

"This is an original application for writ of
habeas corpus sued out by the relator, Grace Brooks,
who is detained by Searcy Baker, chief of police
at Houston, by reason of an order issued by John
M. Holt, U. S. P. H. -., director of sanitation,
the chief health officer of said city of Houston,
which order directs that the relator be confined
at the city farm until discharged by said health
officer. A copy of said order is attached to the
application, and it is substantially stated there-
in that relator has been examined and is infected
with syphilis, and is ordered into quarantine at
the said municipal farm, there to be detained un-
til released by order of said health officer.

"   .   .   .   .

"The fourth contention is that there have been
numerous tests given relator since her confinement,
and that some of the same showed positive and some
negative results. Nothing is thus presented for
our decision. If relator is free from syphilis
or gonorrhea she may present her application for
writ of habeas corpus to the local courts under
the authority of ex parte Hardcastle, decided by
us at this term, and if free therefrom may be dis-
charged. The courts will understand that the health
officers have no right or power to hold in quaran-
tine citizens who do not show the presence of some
of the diseases named in chapter 85 of the Acts of
the Fourth Called Session of the Thirty-fifth Leg-
islature.

"....

"We have carefully examined all of the contentions of the relator, and hold them without merit.  The Legislature has power to declare that prostitution is a source of communicable diseases, and that its suppression is a public health measure, and to direct, by enactment, that reasonable steps be taken, in the manner, and with the latitude necessarily accorded to the enforcement of sanitary and health statutes, to suppress same. The discovery in patients of the diseases at which the provisions of chapter 85, supra, are directed is confined to the medical profession, and the care and treatment thereof is of necessity in the hands of the members of the same noble fraternity. There is nothing in the act which prevents or forbids any suspect, or persons detained, from perfect freedom of treatment by any reputable physician while in the custody of the officials charged with the enforcement of the law; and nothing which deprives any persons so confined for treatment of a speedy hearing at the hands of the court if there be oppression or detention without a cause.  The object of the law is not punishment for the unfortunates who are afflicted with these maladies, so easily transmitted and so fearful in results, but the well-being of these and the remainder of the people.

"In the instant case relator is shown to be a married woman, with a hard-working husband and four children, the youngest being 18 months old, but the record discloses that she declines to live with them, stating that she prefers the life of the streets.  She is shown to be a common prostitute and a street walker, unwilling to stay at home and preferring to live by the profligate use of her body.  Testimony was adduced showing numerous bestowals of carnal favors upon soldiers and other persons, also the relator was afflicted with gonorrhea and syphilis.  We think the provision of said act that such patients should be confined for treatment until declared cured by official pronouncement is not unreasonable, unjust,

or arbitrary.  Our attention is not called to any
authorities holding this or other similar acts
violative of any of the provisions of our Consti-
tution, or discriminatory, arbitrary, or unreason-
able.

"The writ is dismissed and relator remanded
to the custody of the chief of police of the city
of Houston, subject to the orders of the city
health officer of said city."  (Underscoring ours)

Other Texas cases at least implying the right to
arrest under Article 4445, supra; Ex parte Vogler, 110 Tex.
Cr. R. 579, 9 S. W. (2d) 733, 62 A. L. R. 456; Ex parte Gil-
bert (Tex. Cr.), 135 S. W. (2d) 718.

While we have been unable to find any Texas case
passing directly upon the power of peace officers generally
to arrest upon proper warrants or written orders issued by
competent health authorities under the provisions of Article
4445, supra, we think the power is necessarily to be inferred
from the language employed in the above cases.  The next ques-
tion is whether a Texas Ranger, by virtue of his office, has
such authority.

We have carefully read the provisions of Article
6570, R. C. S., 1925:

"The officers, non-commissioned officers and
privates of this force shall be clothed with all
the powers of peace officers, and shall aid the
regular civil authorities in the execution of the
laws.  They shall have authority to make arrests,
and to execute process in criminal cases, and in
such cases shall be governed by the laws regulat-
ing and defining the powers and duties of sheriffs
when in discharge of similar duties; except that
they shall have the power and shall be authorized
to make arrests and to execute all process in
criminal cases in any county in the State.  They
shall, before entering on the discharge of these
duties, take an oath that each of them will faith-
fully perform his duties in accordance with law.

To arrest and bring to justice men who have band-
ed together to prevent the execution of the laws
or to commit robbery or other felonies, the of-
ficers, non-commissioned officers and privates of
said force may accept the services of such citi-
zens as shall volunteer to aid them; but while
so engaged such citizens shall not receive pay
from the State for such services." (Underscoring
ours)

The above statute was a part of the Code prior to
the establishment of the Texas Department of Public Safety.
Article 4413(11) of Vernon's Annotated Civil Statutes con-
tains the following:

"(1) The Texas Ranger Force and its person-
nel, property, equipment and records, now a part
of the Adjutant General's Department of the
State of Texas, are hereby transferred to and
placed under the jurisdiction of the Department
of Public Safety, and are hereby designated as
the Texas Rangers, and as such, constitute the
above mentioned division of the Department.

" . . . .

"(4) The officers shall be clothed with all
the powers of peace officers, and shall aid in
the execution of the laws.

"They shall have authority to make arrests,
and to execute process in criminal cases; and
in civil cases when specially directed by the
judge of a court of record; and in all cases
shall be governed by the laws regulating and de-
fining the powers and duties of sheriffs when in
the discharge of similar duties; except that
they shall have the power and shall be author-
ized to make arrests and to execute all process
in criminal cases in any county in the State.
All officers operating by virtue of this Act
shall have the authority to make arrests, as di-
rected by warrants, and without a warrant under
the conditions now authorized by law, and also
in all cases when the alleged offender is travel-
ing on a railroad, in a motor vehicle, aeroplane

or boat. When any of said force shall arrest any person charged with a criminal offense, they shall forthwith convey said person to the county where he so stands charged, and shall deliver him to the proper officer, taking his receipt therefor. All necessary expenses thus incurred shall be paid by the State.

".  .  .  ."  (Underscoring ours)

Your question as stated is answered in the affirmative, because of the quoted statutes and opinions of the Court of Criminal Appeals.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Benjamin Woodall

Benjamin Woodall
Assistant

BW:db


APPROVED DEC 11, 1942

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN